UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| INFONOW SOLUTIONS OF ST. LOUIS, LLC,  )<br>)<br>Plaintiff,  )<br>)<br>vs.  )<br>)<br>NATIONAL CITY CORPORATION,  )<br>)<br>Defendant.  ) | Case No. 4:08CV00569 JCH |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant National City Corporation's ("National City" or "Defendant") Motion to Dismiss Plaintiff's Petition for Breach of Contract, Fraudulent Inducement to Provide Services and Quantum Meruit (Doc. No. 9). The matter is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Infonow Solutions of St. Louis, LLC ("Infonow" or "Plaintiff") is a Missouri limited liability corporation with its principal place of business in the State of Missouri. (Petition for Breach of Contract, Fraudulent Inducement to Provide Services and Quantum Meruit ("Complaint" or "Compl."), ¶ 1). Defendant National City is a Delaware corporation, with its principal place of business in Ohio, and is authorized to do business in the State of Missouri. (Compl., ¶ 2; Notice of Removal, ¶¶ 8, 9).

According to Plaintiff, National City engaged the services of Infonow to provide a digital image loan submission and storage system (the "Product"). (Compl., ¶ 3). Plaintiff alleges that, beginning in January 2006, National City encouraged Infonow to build and develop a software system for use by National City. (Id., ¶ 4). Plaintiff alleges that National City submitted a License and

Support Agreement and Professional Service Agreement (collectively, "Contracts") for review regarding National City's use of the Product. (Id., ¶ 5). Plaintiff alleges that in January 2007, National City told Infonow that Infonow's changes to the Contracts were acceptable and that National City's signatures would be forthcoming. (Id., ¶ 8). Plaintiff alleges that, from January 2007 until July 2007, National City promised to sign the Contracts, utilized the Product, and encouraged Infonow to continue developing the Product. (Id., ¶ 9). Plaintiff alleges that, on July 17, 2007, National City terminated the project with Infonow without proper notice. (Id., ¶ 11).

Plaintiff filed its Petition in this matter in the Missouri State Court on March 10, 2008. (Doc. No. 1, Ex. A). Plaintiff asserts the following claims for relief: Breach of Contract (Count I), Fraudulent Inducement to Provide Services (Count II), and Quantum Meruit (Count III). Defendant removed the action to this Court based upon diversity jurisdiction, 28 U.S.C. § 1332(a), on April 24, 2008. (Doc. No. 1).

As stated above, Defendant filed the instant Motion to Dismiss on June 2, 2008. (Doc. No. 9).

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint liberally in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto. Servs., Inc., 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). A motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Kaminsky v. Missouri, No. 4:07-CV-1213, 2007 U.S. Dist. LEXIS 72316, at *5-6 (E.D. Mo. Sept. 27, 2007) (citing Bell Atl. Corp. v. Twombly, 127

S. Ct. 1955, 1974 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in Conley v. Gibson, 78 S. Ct. 99 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp., 127 S. Ct. at 1965; Huang v. Gateway Hotel Holdings, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

## DISCUSSION

### I. Count I: Breach of Contract

A federal court exercising diversity jurisdiction applies state substantive law. Guardian Fiberglass, Inc. v. Whit Davis Lumber Co., 509 F.3d 512, 515 (8th Cir. 2007). The district court must first determine whether there is a conflict between the different states' laws. Thomas D. Wilson Consulting, Inc. v. Keeley & Sons, Inc., No. 4:05CV02115, 2006 U.S. Dist. LEXIS 21120, at *6 (E.D. Mo. Apr. 17, 2006) (citation omitted). If there is a conflict, the district court sitting in diversity jurisdiction applies the conflict of law rules for the state in which it sits. Guardian Fiberglass, Inc., 509 F.3d at 515. Missouri applies the "most significant relationship test" from the Restatement (Second) of Conflict of Laws. Rotskoff v. Cooley, 438 F.3d 852, 855 (8th Cir. 2006). "Under that approach, a court applies the substantive law of the state with the most significant relationship to the issues presented in the case." Fuqua Homes, Inc. v. Beattie, 388 F.3d 618, 621 (8th Cir. 2004). In breach of contract actions, the court determines which state has the most significant relationship by considering "the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the place of incorporation and place of business of corporate parties." Gateway W. Ry. v. Morrison Metalweld Process Corp., 46 F.3d 860, 863 (8th Cir. 1995).

The Court must first determine whether a conflict exists among Missouri, Ohio and Delaware laws. Here, Missouri, Ohio and Delaware have the same common law elements for breach of contract claims and have adopted the same statutory and UCC provisions at issue. See Jackson v. Williams, Robinson, White & Rigler, P.C., 230 S.W.3d 345, 348 (Mo. Ct. App. 2007), Jarupan v. Hanna, 173 Ohio App. 3d 284 (Ohio Ct. App. 2007), VLIW Tech., LLC v. Hewlett-Packard Co., 840 A.2d 606, 612 (Del. 2003) (elements of claim for breach of contract); Mo. Rev. Stat. § 432.010, Del. Code Ann. 6, § 2714, Ohio Rev. Code Ann. § 1335.05 (under statute of frauds, contract must in writing or performed within a year); Mo. Rev. Stat. § 400.2-201(3)(a), Del. Code Ann. 6 § 2-201(3)(a), Ohio Rev. Code Ann. § 1302.04(C)(1) (providing exception to the writing requirement for specially manufactured goods). As no conflict exists among the laws of Missouri, Ohio and Delaware, this Court will discuss the law of the state of Missouri, where this Court sits and where the contracts, if any, likely were formed. See also Ohio Sav. Bank v. Progressive Cas. Ins. Co., 521 F.3d 960, 962 (8th Cir. 2008) (ignoring "what might be a complex choice of law analysis because the parties have not identified a relevant state law conflict"); Kostelec v. State Farm Fire & Casualty Co., 64 F.3d 1220, 1224 (8th Cir. 1995) (deeming any objection to the district court's choice of law to have been waived when both parties applied Missouri law in their briefing).

National City argues in its Motion to Dismiss that Infonow's breach of contract claim is barred because the parties did not reach a final agreement (or a "meeting of the minds"). See National City's Memorandum of Law in Support of Defendant's Motion to Dismiss ("Memo. in Supp."), p. 4 (Doc. No. 10). Defendant further argues that, even if there were a meeting of the minds, the Contracts are unenforceable under the statute of frauds because they are not in writing and cannot be performed within a year. See id., p. 4 (citing Mo. Rev. Stat. § 432.010) ("no action shall be brought...upon any agreement that is not to be performed within one year from the making thereof,

unless the agreement upon which the action all be brought, ... shall be in writing and signed by the party to be charged").

Initially, Plaintiff has sufficiently alleged the existence of a contract between the parties. Plaintiff's Complaint alleges that National City submitted the Contracts to Infonow, Infonow made changes to said Contracts, and that National City told Infonow that "signatures would be forthcoming." (Compl., ¶¶ 5-8). In fact, Plaintiff alleges that in January 2007, National City reviewed the proposed changes to the Contracts and "advised Infonow staff that **all changes had been agreed to**." (Id., ¶ 8) (emphasis added). Plaintiff alleges that, for eighteen months, the parties engaged in a course of conduct in accordance with the terms of the Software License and Maintenance Agreement, evidencing the parties' acceptance of its terms. (Id., ¶ 14).[1] Plaintiff has sufficiently alleged that the parties agreed to be bound by the terms of the Contracts. See Wilson Consulting, Inc. v. Keely & Sons, Inc., No. 4:05cv02115, 2007 U.S. Dist. LEXIS 43968, at *14 (Mo. E.D. Jun. 18, 2007) (citing Olathe Millwork Co. v. Dulin, 189 S.W. 3d 199 (Mo. Ct. App. 2006) (setting forth the elements of contract formation under Missouri law)).[2]

Although Plaintiff has properly alleged mutual agreement sufficient to form the Contracts, Defendant argues, and this Court agrees, the Contracts do not satisfy the requirements for an enforceable contract under Mo. Rev. Stat. § 432.010. Plaintiff has not (and cannot) allege that

---

[1] Plaintiff referred to a "License and Support Agreement" in paragraph 5 of the Complaint, but the Court assumes this is the same agreement.

[2] Furthermore, under Article 2 of the UCC, a true "meeting of the minds" is not required. Jim Lynch Cadillac v. Nissan Motor Acceptance Corp., 896 S.W.2d 704, 709 (Mo. Ct. App. 1995) (citing Computer Network, Ltd. v. Purcell Tire & Rubber Co., 747 S.W.2d 669, 675 (Mo. Ct. App. 1988)). "The intent which we are concerned with is the parties' objective intent and what a reasonably prudent person would have been led to believe from the actions or words of the parties." Id. As discussed herein, Article 2 of the UCC may be applicable to Plaintiff's breach of contract claim as it relates to a specially manufactured good, i.e., the Product.

National City executed the Contracts. See Compl., ¶ 9 (noting the "lack of signatures on the Agreements"); cf. Mo. Rev. Stat. § 432.010 (contract must be "signed by the party to be charged therewith"). Furthermore, according to Infonow's own allegations, the Contracts cannot be completed in less than one year. See Compl., ¶ 16 (alleging parties agreed to enter into the Contracts "for a minimum period of two (2) years"); cf. Mo. Rev. Stat. § 432.010 (contract for longer than one year "shall be in writing"). Plaintiff's allegations demonstrate that the parties did not intend for the Contracts to be completed within 2 years. See Thomas D. Wilson Consulting, Inc. v. Keely & Sons, Inc., 2007 U.S. Dist. LEXIS 43968, at *24 (noting the "appropriate time to analyze whether performance was hypothetically possible [within a year] is at the time of formation"). Mo. Rev. Stat. §432.010 would bar Plaintiff's breach of contract claim, except that Plaintiff has alleged that the Contracts are for a specially manufactured good and, therefore, are exempt from the writing and signature requirements of §432.010.

Defendant's Motion to Dismiss Count I fails because Infonow has sufficiently alleged that the Product developed by Infonow for National City was a "specially manufactured good" and, therefore, is not subject to the writing requirement of Mo. Rev. Stat. § 432.010. See Mo. Rev. Stat. § 400.2-201(3)(a). The statute of frauds provision of the UCC, Mo. Rev. Stat. § 400.2-201(a)(3), provides that a contract for the sale of goods is enforceable even if the contract is not in writing if "the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business..." Plaintiff alleges that it was engaged "to provide a digital image loan submission and storage system (hereinafter the "Product") to be used by National City and its customers." (Compl., ¶ 3). Implicit in this allegation is that "this software was not suitable for sale to others in the ordinary course of Infonow's business." (Memorandum of Law in Support of Plaintiff Infonow Solutions of St. Louis, LLC's Response and Objection to Defendant National City

Corporation's Motion to Dismiss Plaintiff's Complaint ("Memo. in Opp."), p. 5) (Doc. No.14). Because Plaintiff has alleged a claim for breach of contract for a specially manufactured good, the Contracts for the Product may be enforceable even if they are not in writing or signed by National City.

Defendant argues that, under Mo. Rev. Stat. § 400.2-201, the "writing must still be signed by the party to be charged." (Reply Memorandum in Further Support of Defendant's Motion to Dismiss Plaintiff's Complaint ("Reply Memo."), p. 5)(Doc. No. 16).[3] This same argument was rejected by the court in Smith-Scharff Paper Co. v. P.N. Hirsch & Co Stores, Inc., 754 S.W.2d 928 (Mo. Ct. App. 1988). In that case, the defendant argued that the plaintiff's claim for breach of contract failed because a written agreement was necessary under the statute of frauds. However, the court held that the goods at issue, which had been developed specifically for that retailer, were "specially made and are generally not suitable for sale to others in the ordinary course of business." Id. at 930. The Smith-Scharff Paper Co. court held that those goods came within an exception to the statute of frauds, § 400.2-201(3)(a), and a written contract was not required to enforce the terms of the parties' agreement. Id. ("an implied contract can be found even though it was not reduced to writing"); see also Jim Lynch Cadillac v. Nissan Motor Acceptance Corp., 896 S.W.2d 704, 709 (Mo. Ct. App. 1995) ("contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract") (citing § 400.2-204(1)). Defendant's Motion to Dismiss Count I fails because the Plaintiff has

---

[3]In support thereof, Defendant cites to Int'l Plastics Development, Inc. v. Monsanto Co., 433 S.W. 2d 290 (Mo. Ct. App. 1968). Reply Memo., p. 5. This forty-year old case does not discuss Mo. Rev. Stat. § 400.2-201(3)(a) and does not support Defendant's claim that contracts for specially manufactured goods are required to be in writing and signed by the party to be charged.

sufficiently alleged that the parties agreed that Infonow would create the specially made Product specifically for National City.

Defendant further argues that Plaintiff's claim is not governed by the UCC, and does not fall under the exception to the writing requirement in § 400.2-201(a)(3), because it is not for the sale of goods but, rather, for services. (Reply Memo., p. 5). Based upon the mere pleadings, this Court cannot determine whether or not the principal object of the Contracts were for services or for the Product, a specially manufactured good within the purview of the UCC, § 400.2-201(3)(a). Prince v. Spire Corp., 584 S.W.2d 108, 111 (Mo. Ct. App. 1979); Reply Memo., p. 5. Thus, for purposes of a motion to dismiss, Plaintiff has sufficiently plead a cause of action for breach of contract and Defendant's Motion to Dismiss Count I of the Petition fails.

## II.     Counts II: Fraudulent Inducement

"When a federal court hears a diversity case, although the court applies the applicable state substantive law, the Federal Rules of Civil Procedure generally govern." Roberts v. Francis, 128 F.3d 647, 650-51 (8th Cir. 1997) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)). Rule 9(b) provides that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Schaller Telephone Co. v. Golden Sky Systems, Inc., 298 F.3d 736, 746 (8th Cir. 2002) (citing Commercial Property v. Quality Inns, 61 F.3d 639, 644 (8th Cir. 1995)); see also United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 557 (8th Cir. 2006). To comply with Rule 9(b), the pleading must include details such as "the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." United States ex rel. Joshi, 441 F.3d at 556. Essentially, "the complaint must

identify the 'who, what, where, when, and how' of the alleged fraud." Id. However, courts "interpret this rule of pleading 'in harmony with the principles of notice pleading.'" Schaller Telephone Co., 298 F.3d at 746 (citing Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001)). Therefore, the pleading does not have to show all of these factors under Rule 9(b) to plead fraud with sufficient particularity, but must state enough so that its pleadings are not "merely conclusory." Roberts, 128 F.3d at 651, n. 5.

In Count II of its Complaint, Plaintiff alleges Defendant fraudulently induced Infonow to provide services. Plaintiff alleges that Infonow was led to believe that a contractual relationship existed by the following actions and representations:

- a. That the Contracts would be signed in short order with minimal alterations and changes;
- b. That National City account executives were on board with the Product and used Infonow staff to train and promote the Product to staff, customers and brokers, conveying an intent to proceed;
- c. That National City requested that Infonow modify the system for specific customers, which Infonow did, in fact, accomplish;
- d. That Infonow personnel were told by National City that this project was a high priority and Infonow was asked to convert National City customers from their existing tools to the Product developed by Infonow;
- e. That Infonow employees were requested by National City on numerous occasions to travel to various areas to train account executives on the system.

(Id., ¶ 24).

Under Missouri law, the "elements of fraud are: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity, or his ignorance of its truth; 5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of the falsity of the representation; 7) the hearer's reliance on the representation being true; 8) his right to rely thereon; and, 9) the hearer's consequent and proximately caused injury. Toghiyany v. Amerigas Propane, Inc., 309 F.3d 1088, 1092 (8th Cir. 2002); Chase Electric Co. v.

- 9 -

Acme Battery Mfg. Co., 798 S.W.2d 204, 210 (Mo. Ct. App. 1990) (citing Heberer v. Shell Oil Co., 744 S.W.2d 441, 443 (Mo. banc 1988)). The Court recognizes that, "[t]he right to rely on a representation is generally a question of fact," and further, "the modern trend is not to extend but to restrict the rule requiring diligence in persons to whom representations are made, and to condemn the falsehood of the person making the representation, rather than the credulity of the victim." McClain v. Papka, 108 S.W.3d 48, 52 (Mo. Ct. App. 2003) (internal quotations and citations omitted). Plaintiff has the burden to establish a submissible case of fraud, and "failure as to any one essential element is fatal to the entire claim." Mash v. Brown & Williamson Tobacco Corp., No. 4:03cv0485, 2004 U.S. Dist. LEXIS 28951, at *29 (E.D. Mo. Aug. 26, 2004) (citing Craft v. Metromedia, Inc., 766 F.2d 1205, 1218 (8th Cir. 1985)).

Defendant asserts several deficiencies with respect to Plaintiff's initial pleading. Defendant argues that Infonow has not alleged any "statements and representations" that constituted fraudulent behavior or which could have been relied upon by Plaintiff. (Memo. in Supp., p. 9-11). Plaintiff's broad allegations that National City, as a company, made fraudulent representations during an eighteen (18) month period are insufficient to satisfy the Rule 9(b) requirements. See Compl., ¶¶ 24-28; Memo. in Opp., p. 9 ("The fraudulent conduct and representations of National City were not limited to a specific employee or manager, but were the result of the conduct of National City **as a corporation** in allowing Infonow to develop and implement the Product throughout multiple branches.") (emphasis added). Plaintiff has not satisfied the "who, what, where, when, and how" requirements under Rule 9(b) of the alleged fraud. United States ex rel. Joshi, 441 F.3d at 556; Foam Supplies, Inc. v. Dow Chem. Co., No. 4:05CV1772 CDP, 2006 U.S. Dist. LEXIS 53497, at *43-44 (E.D. Mo. Aug. 2, 2006).

In the instant case, the Court finds Plaintiff fails to establish a claim of fraudulent inducement, as it does not allege the names of any employees of National City who provided the allegedly fraudulent information to Infonow or when such alleged communications occurred. See Mash, 2004 WL 3316246 at *11. Defendants' Motion to Dismiss as to Count II must therefore be granted. The Court will grant Plaintiff until **Friday, September 12, 2008**, however, within which to file an Amended Complaint, setting forth all the elements of a claim for fraudulent inducement.

### III.   Count III: Unjust Enrichment

Quantum meruit is based "on a promise implied by the law that a person will pay a reasonable and just compensation for valuable services or materials provided at the person's request or with his approval." Chase Electric Co., 798 S.W.2d at 209 (citing McDowell v. Schuette, 610 S.W.2d 29, 37 (Mo. Ct. App. 1980)). The essential elements for a quantum meruit claim are: "(1) a benefit conferred upon defendant by plaintiff; (2) appreciation by defendant of the fact of such benefit; (3) acceptance and retention by defendant without payment." Guar. Elec. Constr. Co. v. LVC Techs., Inc., No. 4:05 CV 849, 2006 U.S. Dist. LEXIS 19138, at *8 (E.D. Mo. Apr. 10, 2006) (citing Green Quarries, Inc. v. Raasch, 676 S.W.2d 261, 264 (Mo. Ct. App. 1984)). In its Complaint, Infonow alleges that it rendered labor and services which National City accepted and currently enjoys, but for which it has never paid. (Compl., ¶¶ 31-37).[4] Specifically, Plaintiff alleges that, from January 2007 through July 2007, National City "continued to market and utilize the product developed by Infonow." (Compl., ¶ 9); see also Memo. in Opp., p. 13 (National City "accepted the benefit of

---

[4] A conflict of law analysis is not necessary because the elements for a cause of action for quantum meruit are the same in Missouri, Ohio and Delaware. See Hambleton v. R.G. Barry Corp., 465 N.E.2d 1298, 1302 (Ohio 1984); Spanish Tiles, Ltd. v. Hensey, No. 05C-07-025 RFS, 2005 Del. Super. LEXIS 427, at *8, n. 9 (Del. Super. Ct. Mar. 30, 2005) (citing 66 Am. Jur. 2d Restitution and Implied Contracts, Sec. 11 (2001)).

Infonow's Product, performance and services"). Furthermore, Plaintiff alleges that "[f]rom the time that the project was implemented at National City, National City demonstrated increased revenues in the National City regions in which the system was implemented." (Compl., ¶ 10; cf. Memo. in Supp., p. 2 (arguing that Plaintiff never alleges that National City "ever derived any benefit from such 'Product'")). These allegations are sufficient to demonstrate that National City benefitted from the goods and/or services of Infonow. Infonow has thus stated a sufficient claim for recovery under the theory of quantum meruit.

Upon consideration, the Court will deny Defendant's Motion to Dismiss with respect to Count III, because Plaintiff has alleged a cause of action for quantum meruit.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. No. 9) is **GRANTED** in part and **DENIED** in part, in accordance with the foregoing.

**IT IS FURTHER ORDERED** that Plaintiff is are granted until **Friday, September 12, 2008**, within which to file an Amended Complaint, curing the above-described deficiencies.

Dated this 27th day of August, 2008.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE